RECEIVED

SEP 21 2020

ZAHID N. QURAISHI
U.S. MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Zahid N. Quraishi, U.S.M.J. |
| v. | : | Mag. No. 20-14031 (ZNQ) |
| MALLIE M. EVANS and ELIZABETH SANCHEZ | : | **CRIMINAL COMPLAINT** |
| | : | |

I, Vernon I. Addison, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Special Agent of the United States Federal Bureau of Investigation and that this Complaint is based on the following facts:

**SEE ATTACHMENT B**

continued on the attached pages and made a part hereof.

s/ Vernon I. Addison
Vernon I. Addison, Special Agent
Federal Bureau of Investigation

Attested to me by telephone,
pursuant to FRCP 4.1(b)(2)(A),

September 21, 2020     at     Trenton, New Jersey
Date                           City and State

Honorable Zahid N. Quraishi
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

## ATTACHMENT A

### COUNT ONE
(Sex Trafficking by Force, Fraud, or Coercion)

From in or around April or May 2015, through on or about September 7, 2015, in Burlington County, in the District of New Jersey, and elsewhere, the defendant,

MALLIE M. EVANS,

did knowingly, in and affecting commerce, recruit, entice, harbor, transport, provide, obtain, advertise, maintain, and solicit by any means, Victim-1, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, coercion, and any combination of such means, would be used to cause Victim-1 to engage in a commercial sex act.

In violation of Title 18, United States Code, Sections 1591(a)(1) and (b)(1).

## COUNT TWO
(Sex Trafficking by Force, Fraud, or Coercion)

From in or around June 2017, through in or around the fall of 2017, in Burlington County, in the District of New Jersey, and elsewhere, the defendant,

### MALLIE M. EVANS,

did knowingly, in and affecting commerce, recruit, entice, harbor, transport, provide, obtain, advertise, maintain, and solicit by any means, Victim-2, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, coercion, and any combination of such means, would be used to cause Victim-2 to engage in a commercial sex act.

In violation of Title 18, United States Code, Sections 1591(a)(1) and (b)(1).

## COUNT THREE
(Conspiracy to Transport an Individual in Interstate Commerce
to Engage in Prostitution)

From on or about June 12, 2017, through on or about June 16, 2017, in Burlington County, in the District of New Jersey, and elsewhere, the defendants,

MALLIE M. EVANS and
ELIZABETH SANCHEZ,

did knowingly conspire and agree with each other to transport Victim-3 in interstate and foreign commerce, with the intent that Victim-3 engage in prostitution, and in any sexual activity for which any person can be charged with a criminal offense, namely, N.J.S.A. Section 2C:34-1(b)(2), contrary to Title 18, United States Code, Section 2421.

In violation of Title 18, United States Code, Section 371.

## COUNT FOUR
(Sex Trafficking by Force, Fraud, or Coercion)

From on or about June 12, 2017, through on or about June 16, 2017, in Burlington County, in the District of New Jersey, and elsewhere, the defendant,

### MALLIE M. EVANS,

did knowingly, in and affecting commerce, recruit, entice, harbor, transport, provide, obtain, advertise, maintain, and solicit by any means, Victim-3, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, coercion, and any combination of such means, would be used to cause Victim-3 to engage in a commercial sex act.

In violation of Title 18, United States Code, Sections 1591(a)(1) and (b)(1).

COUNT FIVE
(Interstate Transportation for Prostitution)

From in or around May or June 2017, through in or around the late summer of 2017, in Burlington County, in the District of New Jersey, and elsewhere, the defendant,

MALLIE M. EVANS,

did knowingly transport Victim-4 in interstate and foreign commerce, with the intent that Victim-4 engage in prostitution, and in any sexual activity for which any person can be charged with a criminal offense, namely N.J.S.A. Section 2C:34-1(b)(2).

In violation of Title 18, United States Code, Section 2421.

5

## ATTACHMENT B

I, Vernon I. Addison, am a Special Agent with the Federal Bureau of Investigation ("FBI"). I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and items of evidence. Where statements of others are related herein, they are related in substance and in part. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

BACKGROUND

1. At all times relevant to this criminal complaint:

    a. Defendant MALLIE M. EVANS ("EVANS") resided in or around Philadelphia, Pennsylvania, and recruited and coerced victims to engage in prostitution for his financial benefit.

    b. Defendant ELIZABETH SANCHEZ ("SANCHEZ"), EVANS's girlfriend and associate, resided in or around Philadelphia, Pennsylvania, and assisted and conspired with EVANS to recruit and coerce victims to engage in prostitution for her financial benefit.

    c. Victim-1 resided in Georgia, and engaged in commercial sex acts in New Jersey and Pennsylvania at the direction and behest of defendant EVANS.

    d. Victim-2 resided in Pennsylvania, and engaged in commercial sex acts in New Jersey and Pennsylvania at the direction and behest of defendant EVANS.

    e. Victim-3 resided in Pennsylvania, and engaged in commercial sex acts in New Jersey at the direction and behest of defendants EVANS and SANCHEZ.

    f. Victim-4 resided in Maryland, and engaged in commercial sex acts in New Jersey at the direction and behest of defendant EVANS.

    g. Victim-5 resided in Maryland, and engaged in commercial sex acts in New Jersey at the direction and behest of defendant EVANS.

    h. Victim-6 resided in Pennsylvania, and engaged in commercial sex acts in New Jersey and elsewhere at the direction and behest of defendant EVANS.

2.      Law enforcement conducted an extensive investigation of EVANS and SANCHEZ, which revealed that EVANS, with the agreement, assistance, and support of SANCHEZ, recruited, and forced, defrauded, and/or coerced individuals from across the eastern United States, and regularly transported them in interstate commerce for the purpose of having those individuals engage in prostitution. As a result of the investigation, law enforcement identified Victim-1, Victim-2, Victim-3, Victim-4, Victim-5, and Victim-6, each of whom worked as a prostitute for EVANS and engaged in commercial sex acts at his direction.

3.      Law enforcement's investigation of EVANS and SANCHEZ is summarized below.

VICTIM-1

4.      The investigation revealed that, in or around April or May 2015, EVANS, while driving in or around Atlanta, Georgia, met and then enticed Victim-1 into his car by claiming to know Victim-1's family. EVANS then drove Victim-1 from Georgia to Philadelphia, Pennsylvania. Upon arriving in Pennsylvania, Victim-1 was directed by a female—whom law enforcement has identified as defendant SANCHEZ—that Victim-1 would have to have sex with customers for money, and that EVANS would take care of Victim-1 and protect Victim-1. Thereafter, EVANS took all of Victim-1's personal property, including Victim-1's cellular phone, identification card, and a copy of Victim-1's birth certificate, and would not allow Victim-1 to call Victim-1's family.

5.      EVANS gave Victim-1 a "work" cellular phone on which Victim-1 received calls from customers seeking sex. EVANS explained that the customers would call the "work" phone in response to advertisements that EVANS placed on Backpage.com.[1] EVANS instructed Victim-1 to ask all customers if they were affiliated with law enforcement.

6.      Thereafter, EVANS transported Victim-1 from Philadelphia, Pennsylvania, to hotels and motels located in and around Burlington County, New Jersey, and elsewhere. At EVANS's direction, Victim-1 engaged in commercial sex acts with customers arriving at the hotel or motel room in which EVANS placed Victim-1. Victim-1 collected money from the customers, which EVANS then took from Victim-1 after the customers left. EVANS did not allow Victim-1 to keep any of the money that the customers paid Victim-1 in exchange for sex acts. While engaging in prostitution at EVANS's direction,

---

[1] Backpage.com was a website that allowed users to post advertisements online, including advertisements for commercial sex acts. As a result of the criminal conduct identified on the website, the United States Department of Justice seized Backpage.com on April 6, 2018, and it is no longer in operation.

Victim-1 encountered multiple other unidentified individuals in both Philadelphia and in New Jersey engaging in prostitution at EVANS's direction.

7. The investigation also revealed that EVANS threatened Victim-1 that if Victim-1 ever attempted to leave EVANS, EVANS would kill Victim-1. Victim-1 believed EVANS's threats because, among other reasons, she observed that he possessed two handguns. On different occasions after Victim-1 had told EVANS that he/she wished to leave, EVANS punched Victim-1 in the face, pulled Victim-1's hair, and pointed a handgun at Victim-1 to induce Victim-1 to obey him and continue engaging in commercial sex acts for his financial benefit. On one occasion, shortly after Victim-1 told SANCHEZ that he/she wished to leave, EVANS arrived at the hotel where Victim-1 and SANCHEZ were staying, became aggressive, called Victim-1 ungrateful, pointed a handgun at Victim-1, and forced Victim-1 to have sex with him.

8. In or around September 2015, EVANS transported Victim-1 from Philadelphia, Pennsylvania, to a motel in Mount Laurel, New Jersey ("Motel-1"), with the intent that Victim-1 continue engaging in prostitution for him at the motel. Business records from Motel-1 reflected that the room in which EVANS held Victim-1 was reserved from September 6, 2015, through September 8, 2015, by another prostitute working for EVANS, whom law enforcement identified as Victim-6. In a subsequent interview with law enforcement, Victim-6 identified EVANS as Victim-6's former pimp and stated that he (EVANS) had, on at least one occasion, transported Victim-6 from Philadelphia to Motel-1. Victim-6 provided law enforcement with EVANS's cellular telephone number, which Victim-6 used to call and speak with EVANS (the "Evans Number").

9. On or about September 7, 2015, and notwithstanding EVANS's threats, Victim-1 escaped from Motel-1. Victim-1 sought shelter in a nearby coffee shop and, thereafter, another individual observed Victim-1 was in distress. The individual introduced Victim-1 to another individual, who put Victim-1 in contact with law enforcement.

10. Victim-1 provided law enforcement with, among others, the cellular telephone number for the work phone that EVANS provided Victim-1. A search of a database of recorded Backpage.com advertisements returned multiple advertisements for commercial sex acts which listed that telephone number as the point of contact for sexual services. One such advertisement was posted on September 7, 2015, the date of Victim-1's escape from Motel-1. Victim-1 identified himself/herself as the person depicted in some of the photographs posted as part of that advertisement.

VICTIM-2

11.     The investigation revealed that, in or around June 2017, EVANS, while driving in or around Philadelphia, Pennsylvania, met and then enticed Victim-2 into his car. Victim-2 did not have a place to stay in Philadelphia. EVANS invited Victim-2 to live with him in his combination residence and studio in Philadelphia (the "Studio") and to work for him as a model and in music videos. After Victim-2 moved in with him, EVANS began physically abusing Victim-2, punching Victim-2 in the face and ribs, kicking Victim-2, beating Victim-2 with a metal pole, and throwing Victim-2 down the stairs. Victim-2 observed that EVANS possessed a handgun, which he would sometimes carry while he punched and kicked Victim-2.

12.     EVANS also forced Victim-2 to engage in prostitution. EVANS transported Victim-2 to addresses throughout Philadelphia, as well as to hotels in or around Mount Laurel, New Jersey, and Cherry Hill, New Jersey, to engage in prostitution. EVANS placed advertisements for Victim-2 on, among other websites, Backpage.com, using the photographs of other individuals. EVANS gave Victim-2 approximately six different cellular phones to receive calls and messages from customers seeking sex. EVANS took all of the money that Victim-2 earned through commercial sex acts undertaken at EVANS's direction.

13.     When Victim-2 was left alone in the hotel room with customers and in between periods with customers, defendant SANCHEZ often was in the room across the hall or next door. Victim-2 felt that he/she could not escape from EVANS at these times because SANCHEZ would report Victim-2's escape attempt to EVANS.

14.     When Victim-2 refused to engage in prostitution, EVANS physically hurt Victim-2 by, among other things, punching Victim-2 in the face. For some periods, EVANS took Victim-2's cellular phone to prevent Victim-2 from calling friends or family. EVANS threatened Victim-2 that if Victim-2 left and ceased engaging in prostitution for him, he would kill Victim-2 and Victim-2's family.

15.     After approximately three months, in or around the fall of 2017, Victim-2 escaped from EVANS's Studio in the middle of the night.

VICTIM-3

16.     The investigation revealed that, on or about June 12, 2017, EVANS, while driving in or around Philadelphia, Pennsylvania, met and then enticed Victim-3 into his car and, thereafter, drove Victim-3 to his Studio. EVANS induced Victim-3 into his car by telling Victim-3 that EVANS could give Victim-3 a better life. Specifically, EVANS offered to get Victim-3 jobs as, among other things, a model in photoshoots and music videos.

17. Thereafter, EVANS drove Victim-3 from his Studio to a hotel in or around Mount Laurel, New Jersey ("Hotel-1"), and brought Victim-3 to a hotel room. EVANS introduced Victim-3 to SANCHEZ. Over the course of the ensuing days, SANCHEZ explained to Victim-3 that Victim-3 would now be a prostitute for EVANS, and explained how to text customers using a cellular phone that SANCHEZ provided. SANCHEZ instructed Victim-3 to make certain that customers were not police officers before arranging their visits to the hotel. SANCHEZ and EVANS explained to Victim-3 that they placed advertisements for prostitutes on Backpage.com. SANCHEZ told Victim-3 that SANCHEZ and EVANS used the photographs of people other than the prostitutes working for EVANS in the advertisements, but provided numbers to cellular phones that EVANS and SANCHEZ controlled and provided to the prostitutes. According to Victim-3, SANCHEZ had at least four cellular phones.

18. Business records from Hotel-1 reflect that SANCHEZ paid, in cash, to reserve rooms at Hotel-1 on or about June 11, 2017, and June 12, 2017. Security camera footage from Hotel-1 also showed SANCHEZ paying for rooms at the front desk of Hotel-1 each day from on or about June 11, 2017, through on or about June 17, 2017.

19. After EVANS brought Victim-3 to Hotel-1, at EVANS's and/or SANCHEZ's direction, Victim-3 engaged in commercial sex acts with customers at Hotel-1 in exchange for money. Each time, SANCHEZ, who stayed in the same room with Victim-3, would leave the hotel room shortly before the customer's arrival in order to watch the customer from a nearby location. After the customer left the hotel room, SANCHEZ would enter the room and take the money paid by the customer from Victim-3.

20. EVANS and SANCHEZ would get angry with Victim-3 whenever Victim-3 failed to answer a message from a potential customer on the phone that SANCHEZ had provided to Victim-3. On at least one occasion, EVANS threatened Victim-3, in sum and substance, that "if you turn your back on me, I'm going to really make you my bitch."

21. On or about June 14, 2017, EVANS drove Victim-3 to another motel in or around Mount Laurel, New Jersey ("Motel-2"), to introduce Victim-3 to other prostitutes working for him. For example, EVANS took Victim-3 to a room and introduced Victim-3 to Victim-4 and Victim-5. EVANS left Victim-3 alone with Victim-4 and Victim-5 and, thereafter, returned and drove Victim-3 back to Hotel-1. Business records from Motel-2 confirmed that EVANS rented a room at Motel-2 on June 14, 2017.

22. During this period, EVANS, SANCHEZ, and Victim-3 returned from Hotel-1 to Philadelphia. For example, on at least one occasion, EVANS drove Victim-3 to meet SANCHEZ in Philadelphia. EVANS, together with SANCHEZ, then drove Victim-3 back from Philadelphia to Hotel-1, where, at EVANS's

and/or SANCHEZ's direction, Victim-3 engaged in commercial sex acts with customers.

23. On or about June 16, 2017, Victim-3 accessed an online messaging application to contact an acquaintance (the "Acquaintance") to ask for help. Some of the messages between Victim-3 and the Acquaintance are set forth below:

| 7:18 p.m. | Victim-3 | I need help . . . . . . Send the cops over |
|---|---|---|
| 7:19 p.m. | Victim-3 | I can't accept calls . . . . . . |
| 7:19 p.m. | Acquaintance | Who is this and where to |
| 7:20 p.m. | Victim-3 | [Victim-1] . . . . . I'm in Mt. Laurel . . . .<br><br>New Jersey<br><br>I'm a sex slave |
| 7:20 p.m. | Acquaintance | Do you have an address? |
| 7:21 p.m. | Victim-3 | [Address of Hotel-1] |

24. The Acquaintance contacted the police, and law enforcement officers responded to the hotel room at Hotel-1 where SANCHEZ and Victim-3 were present. Law enforcement officers escorted Victim-3 out of the hotel room to safety.

25. Victim-3 provided law enforcement with the Evans Number and identified it as the cellular telephone number belonging to EVANS. From in or around February 2016 to in or around January 2018, the Evans Number was assigned to the same prepaid account without subscriber name or address information (the account remained subscribed under the name "Update Info" with the address of a retail outlet of a wireless provider). From in or around late 2017 through its account termination in 2018, the Evans Number was used primarily to call numbers in the Philadelphia, Delaware, and Southern New Jersey area, including one of EVANS's close family members.

26. A search of Backpage.com records revealed at least 28 advertisements that contained the Evans Number as a point of contact from in or around May 2016 through August 2017. These advertisements either offered commercial sex acts to customers or were directed at recruiting women to work as prostitutes. One such advertisement, which was active and updated between in or around April and July of 2017, was posted by the Backpage.com user account with identification number 28105911 (the "Evans Account").

27.   The user of the Evans Account posted numerous advertisements to Backpage.com in 2017 advertising commercial sex acts. On or about June 12, 2017 — the day that EVANS picked up Victim-3 — the user of the Evans Account posted an advertisement to Backpage.com for a female offering commercial sex in "Mount laurel Rt 73." (Hotel-1, where Victim-3 was held as described above, is located in Mount Laurel near Route 73.) The user of the Evans Account removed the advertisement at approximately 1:57 a.m. on or about June 18, 2020, hours after Victim-3's escape from Hotel-1

VICTIM-4 and VICTIM-5

28.   In or around May or June 2017, EVANS contacted Victim-5 through an online dating application and enticed Victim-5 to come to Philadelphia, Pennsylvania. At EVANS's invitation, Victim-5 and Victim-5's friend, Victim-4, traveled from in or around Baltimore, Maryland, to Delaware. Thereafter, EVANS met Victim-4 and Victim-5 in Delaware and drove them to Philadelphia. EVANS explained that he wanted Victim-4 and Victim-5 to "trick" for him, meaning to prostitute themselves for his financial benefit.

29.   EVANS drove Victim-4 and Victim-5 from Philadelphia to Motel-2, where Victim-4 and Victim-5 engaged in prostitution. EVANS gave Victim-4 and Victim-5 cellular phones to communicate with customers. EVANS instructed Victim-4 and Victim-5 to screen all calls to ensure that customers were not affiliated with law enforcement. EVANS took all of the money that Victim-4 and Victim-5 earned through commercial sex acts undertaken at EVANS's direction.

30.   On one occasion, EVANS drove Victim-4 and Victim-5 to Hotel-1, where he told them SANCHEZ and Victim-3 were staying. EVANS instructed Victim-4 and Victim-5 to wait in the car while he collected money from SANCHEZ and Victim-3.

31.   Approximately one month after Victim-4 and Victim-5 met EVANS, EVANS hit Victim-4 in the face while Victim-4 and Victim-5 were in his car. EVANS brought Victim-4 and Victim-5 to a hotel room and left to meet SANCHEZ. Victim-4 left the hotel while EVANS was away and did not return. Victim-5 subsequently left EVANS as well.